UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SARAH JUAREZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 2:09-CV-160<br><br>*Mattice / Lee* |

## REPORT AND RECOMMENDATION

This action was brought by Plaintiff Sarah Juarez pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff seeks the award of benefits, or in the alternative, a remand to the Commissioner. Plaintiff and Defendant have filed cross motions for summary judgment [Doc. 7, 11]. For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for summary judgment [Doc. 7] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 11] be **DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED**.

### I. ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI alleging disability as of September 15, 2004 (Tr. 39-41, 442-44). As relevant here, her claim was denied by an administrative law judge ("ALJ") who found Plaintiff was not disabled because she could perform her past relevant work as a fast food worker (Tr. 13-18). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 5-8).

## II. ELIGIBILITY FOR DISABILITY BENEFITS

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009).

## III. FACTUAL BACKGROUND AND ALJ'S FINDINGS

Plaintiff's memorandum in support of her motion contains an extensive review of the record concerning her physical impairments. The Commissioner does not dispute the accuracy of Plaintiff's summary of the record regarding her physical impairments, nor does Plaintiff rely on those physical impairments to substantiate her disability. There is therefore no need to repeat the summary of the Plaintiff's physical ailments. The crux of Plaintiff's appeal concerns the ALJ's treatment of Plaintiff's mental impairments, and the information relevant to those impairments is summarized below.

2

### A. Mental Impairments

A consultative examination was performed by a psychologist, John W. Thurman, Ph.D., on February 27, 2006, at the request of a state agency (Tr. 262-67). No pyschological testing was requested or performed (Tr. 266). Plaintiff reported that: being around a lot of people made her nervous; she had anxiety attacks; things repeated in her head; she could not handle being around her nieces and nephews; she had nervous problems as a child that had worsened since age 20; she was separated from her husband because he could not cope with her moods; she believed she was not stable enough to have children; and she completed the eighth grade, after repeating the first and third grades (Tr. 262-64).

Dr. Thurman described Plaintiff as alert, oriented, cooperative, and a reliable historian with fair grooming and hygiene (Tr. 263). He noted that Plaintiff reported she was no longer seeing a mental health professional because she had lost her Tenn-Care insurance and she denied any past hospitalizations for mental health reasons (*id.*). He also noted that Plaintiff denied experiencing any current suicidal or homicidal ideation, although she had experienced ideation without attempt in the past (Tr. 263-64). He noted that Plaintiff stated she did not know why she quit school and she reported one arrest for drug charges and theft (Tr. 264).

In a mental status examination, Dr. Thurman found Plaintiff was alert and oriented to all spheres, did not display any unusual mannerisms or bizarre behavior, and her social interactions during the examination were appropriate (Tr. 265). Dr. Thurman rated Plaintiff's mood as unremarkable and commented that her affect was appropriate and consistent with her mood (*id.*). Dr. Thurman did not find any evidence of gross disturbance in either thought process and content or in sensory and perceptual abilities (*id.*). Dr. Thurman described Plaintiff's thoughts as logical and

3

coherent (*id.*). He estimated Plaintiff's level of intelligence as low average (*id.*). Dr. Thurman found moderate limitations in the following areas of functioning: ability to pay attention to work environment and help maintain safe work environment; ability to maintain mental persistence; ability to comprehend and carry out complex and detailed instructions; ability to make work related decisions; motivation and energy level; anxiety in social settings; ability to work with public; ability to interact appropriately with others; ability to maintain emotional stability; ability to adapt to work setting; and ability to cope with work-related stress (Tr. 266). Dr. Thurman also opined that Plaintiff was mildly limited in her ability to comprehend and carry out multi-step instructions and minimally impaired in her ability to comprehend and carry out simple instructions (*id.*). Dr. Thurman diagnosed Plaintiff as having a mild-to-moderate anxiety disorder and mild-to-moderate depression and assigned a Global Assessment of Functioning ("GAF") score of 59[1] (*id.*).

A non-examining psychologist, Edward L. Sachs, Ph.D., reviewed the file evidence at the request of the state agency and competed a mental residual functional capacity ("RFC") assessment (Tr. 290-92) and Psychiatric Review Technique Form ("PRTF") (Tr. 276-89) dated March 27, 2006. In the PRTF, Dr. Sachs' checked the medical disposition categories for the listings as 12.04 (affective disorders) and 12.06 (anxiety-related disorders) (Tr. 276).[2] Regarding the B criteria, Dr. Sachs noted moderate functional limitations in social functioning and maintaining concentration,

---

[1] A GAF rating of 59 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, *Multiaxial Assessment*, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") (2002).

[2] The ALJ's decision does not specify either of the mental listings at issue, but does note that he found no listing criteria, including 12.00, were met or equaled (Tr. 16).

persistence, or pace (Tr. 286). Dr. Sachs' comments state that Plaintiff's psychiatric allegations are credible, but there that there is little history of psychiatric treatment (Tr. 289). He noted that Plaintiff's symptoms were mild to moderate and did not meet criteria for a specific disorder and that the overall evidence supports no more than moderate psychiatric limitations (Tr. 289).

In the RFC assessment form, Dr. Sachs checked boxes indicating that Plaintiff was moderately limited in the following areas of ability: to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 290-91). Dr. Sachs checked that Plaintiff was not significantly limited in twelve other areas related to mental functioning at work (Tr. 290-91). Dr. Sachs found no evidence of any episodes of decompensation in work or work-like settings (Tr. 286). In comments, Dr. Sachs stated that Plaintiff could perform simple and low level detailed tasks over a full work week, could interact infrequently or one-to-one with the general public and meet basic social demands in a work setting, and could adapt to gradual or infrequent changes (Tr. 292).

### B. Plaintiff's Education

Plaintiff spent three years in the first grade, spent two years in the third grade, and received all F's in the ninth and tenth grades (Tr. 395-401; 538).

5

### C. Plaintiff's Work History and Hearing Testimony

Plaintiff last worked in 2004, in a farm field (Tr. 539). Plaintiff worked at a Subway sandwich shop making sandwiches for more than ten years (Tr. 540). She also described work at other fast food and more formal restaurants, including some cashiering work (Tr. 541-42). Plaintiff identified her diabetes as her most serious medical problem (Tr. 543). Plaintiff testified that she took Prozac for depression, and that the Health Department prescribed this medication for her (Tr. 548). She testified that she was not seeing a mental health professional because she did not have the money to do so (Tr. 548). Plaintiff further testified that she had taken a number of different mental health medications since she was eighteen, including Zoloft, Paxil, and Effexor (Tr. 548).

### D. ALJ's Findings

After the hearing, the ALJ issued an opinion finding Plaintiff was not disabled. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 17). At step two, the ALJ found Plaintiff's diabetes, obesity, and musculoskeletal impairments and "mildly severe emotional impairments" were considered severe under applicable regulations (*id.*) At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments severe enough to meet or medically equal a listed impairment (*id.*). The ALJ determined Plaintiff had the RFC to perform light work, with the additional limitation that she could perform only simple, unskilled work "because of her no more than mid to moderate emotional limitations." (Tr. 18). At step four, the ALJ determined that this RFC determination did not preclude Plaintiff from performing her past relevant work, thus ending the sequential analysis at the fourth step (*id.*). The ALJ concluded that Plaintiff was not under a disability at any time through the date of his decision (*id.*).

## IV. ANALYSIS

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have made different findings or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

### B. Reversible or Harmless Error

An ALJ must follow applicable regulations when making disability determinations. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of

7

administrative law that agencies are bound to follow their own regulations."). If the ALJ fails to do so, the reviewing court may remand the case to the Commissioner under two circumstances. First, remand for procedural error is appropriate where the regulation is intended to confer rights on the claimant herself, as opposed to merely being an "adjudicatory tool" designed to help the agency make its decision. *Rabbers*, 582 F.3d at 656 (explaining that the "treating physician rule" is a regulation of the former sort); *Wilson*, 378 F.3d at 546-47. In such cases, remand is appropriate even if "a different outcome on remand is unlikely."[3] *Wilson*, 378 F.3d at 546. Second, even where the regulation is not intended to confer a procedural right on the claimant, a remand is appropriate if the failure to follow the required procedure prejudices the claimant on the merits. *Rabbers*, 582 F.3d at 651; *Wilson*, 378 F.3d at 546-47. The instant case is of the latter variety, and it turns on the application of the "prejudicial error" test.

The procedural rules at issue govern the evaluation of a claimant's mental impairments. When accounting for mental impairments at steps two and three of the sequential evaluation, the ALJ must follow a "special technique" which requires specific written findings documenting the claimant's functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)3), (e)(2). These areas are known as the "B" criteria. *Rabbers*, 582 F.3d at 653. The first three areas are rated on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* The fourth area is rated on a four-point scale: none, one or two, three, or four or more. *Id.* If the claimant's rating is "none" for all areas, she will not be considered to have a "severe" impairment at step two. *Id.*

---

[3] A *de minimis* error in such cases, however, may not require reversal. *See Rabbers*, 582 F.3d at 656 (noting that it is an open question).

8

Otherwise, the ALJ considers the same criteria at step three.[4] If the claimant has a severe impairment that does not meet a listing, the ALJ's findings for the criteria are translated into an RFC assessment. *See* 20 C.F.R. § 404.1520a(d)(3). The ALJ is required to document the application of this special technique in the written decision.[5] *Rabbers*, 582 F.3d at 654.

The parties agree that the ALJ failed to make specific findings regarding the severity of Plaintiff's mental impairment, as required by the applicable regulations. As in *Rabbers*, the ALJ here determined the mental impairments at issue were severe but did not meet or medically equal one of the listed impairments, but he did not make the required "B" criteria findings. The procedural steps required by the "special technique," according to the *Rabbers* court, are adjudicatory tools that will necessitate a remand only if they prejudice the claimant on the merits. In *Rabbers*, the court found no prejudice from the ALJ's error because even though the ALJ failed to rate the B criteria at step two, he nonetheless concluded that the claimant had a severe impairment and "proceeded to step three, which was all [the claimant] could have asked for." *Id.* at 658. Similarly, the claimant was not prejudiced at step three because "even had the ALJ made specific findings he would have reached the same conclusion at step three"--namely, that the claimant did not meet the criteria of any listed impairment. *Id.*

---

[4] Provided that a claimant provides medical documentation of the "A" criteria for either listing 12.04 or 12.06, she will be considered disabled if she has any two of the following "B" criteria: a "marked" limitation in one of the first three areas or "repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). Alternatively, a claimant may meet the listings under their respective "C" criteria. The C criteria have not been raised as an issue here.

[5] Until 2000, the ALJ was required to complete a PRTF and append the form to the ALJ's decision, but now the regulations require only that the written decision "incorporate the pertinent findings and conclusions based on the technique." *Id.* at 654 (quoting 20 C.F.R. § 404.1520a(e)(2)).

The Commissioner interprets *Rabbers* to require reviewing courts to affirm the ALJ's conclusion so long as it is supported by substantial evidence. Indeed, the Commissioner argues in so many words that this Court "should affirm the ALJ's decision, because despite error, it is supported by substantial evidence." [Doc. 12 at 11]. Yet *Rabbers* specifically held that an ALJ's decision will be reversed when it prejudices the claimant on the merits, "*even if supported by substantial evidence*." *Rabbers*, 582 F.3d at 651 (emphasis added). As noted, substantial evidence review "presupposes there is a zone of choice within which the decisionmakers can go either way . . . ." *Felisky*, 35 F.3d at 1035. Thus, to read *Rabbers* as the Commissioner proposes would immunize an ALJ's decision from review whenever the ALJ *could have* found on the record that the claimant was not disabled. Instead, *Rabbers* holds that an error is harmless only when "concrete factual and medical evidence" is "apparent in the record" and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled. *Rabbers*, 582 F.3d at 657-58 (error was harmless because ALJ "would have reached the same conclusion"). This is no trivial distinction, but goes to the very heart of administrative adjudication. If the reviewing court were permitted to affirm any outcome that *could have* been supported by the evidence, it "'would propel [the court] into the domain which Congress has set aside exclusively for the administrative agency.'" *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 WL 2628355, at *10 (6th Cir. Aug. 27, 2009) (unpublished) (*quoting SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Thus, the harmless error inquiry turns on whether the ALJ *would have* reached the same conclusions at steps two and three even if he had made the "B" criteria findings. A reviewing court must "exercise caution" when undertaking this inquiry. As the *Rabbers* court warned, it may be difficult or impossible to determine whether an error is harmless when the record contains

10

"conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or consider." *Rabbers*, 582 F.3d at 657-68. In such cases, the court is unable to review the ALJ's decision, and is instead left to speculate as to how the ALJ might have weighed that evidence.

Plaintiff's brief does not directly address *Rabbers*, but she does argue that the ALJ failed to address the moderate limitations set forth by Dr. Sachs. As explained above, Dr. Sachs opined that Plaintiff was moderately limited in several areas, including two of the "B" criteria (social functioning and concentration, persistence, and pace) (Tr. 286). In addition, Dr. Sachs checked boxes indicating Plaintiff was moderately limited with respect to eight of twenty categories of work-related functioning (Tr. 290-91). The Commissioner argues Dr. Sachs clarified these restrictions in his comments, and that the mental limitations placed on Plaintiff's RFC by the ALJ are consistent with Dr. Sachs' opinion when viewing the checkmarks and comments together.

I do not find the ALJ's error to be harmless in this case. The ALJ stated that Dr. Thurman diagnosed depression and anxiety, but that "the depression and anxiety were only found to be mild to low-level moderate in intensity." (Tr. 16). Dr. Sach's opinion is not discussed anywhere in the ALJ's decision, which states only that "[t]he 2 consultative evaluations provide the only quantitative-type assessment of the claimant's ability to perform work-related activities except for the state-agency assessments which are based in large part upon the consultative evaluations. Those consultative evaluations are reasonable and they are consistent with the record." (Tr. 17). The ALJ did not specifically address the moderate limitations found by Dr. Sachs. Thus, the record contains "evidence favorable to the [Plaintiff] that the ALJ simply failed to acknowledge or consider." *See Rabbers* at 658-59. As acknowledged in *Rabbers*, this is precisely the type of situation where it is

11

difficult, or even impossible, to assess whether an ALJ would have made the same conclusion if he had followed the required procedures. *Id.*

Dr. Sachs concluded that Plaintiff's psychiatric allegations were credible, but noted that there was little history of psychiatric treatment (Tr. 289). The ALJ rejected Plaintiff's testimony insofar as it would have supported more profound mental impairments noting the lack of objective evidence supporting Plaintiff's mental impairment, along with apparent inconsistencies between her testimony and the record, without addressing Dr. Sachs' conclusion that Plaintiff's psychiatric allegations were credible (Tr. 17). As suggested by the Commissioner, Plaintiff's mental health treatment "was quite minimal" [Doc. 12 at 1], and thus there was a lack of objective evidence concerning her psychiatric allegations in the record. A lack of such treatment is not particularity relevant, however, because the record does contain plausible reasons for the lack of treatment, such as Plaintiff's inability to afford such treatment (Tr. 548) and the Plaintiff's loss of Tenn-Care insurance (Tr. 263). The ALJ's decision does not reflect that he considered such information and decision fails to even mention the issue. Yet courts have long recognized that a claimant's failure to seek mental health treatment may be explained by the condition itself or by an inability to afford treatment or lack of access to free or low-cost medical services. *See, e.g., McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990); *Blankenship v. Bowen*, 874 F.2d 116, 1124 (6th Cir. 1989); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)).

In sum, this is not a case like *Rabbers* where the ALJ properly rejected the only evidence that could have supported a contrary conclusion. *See Rabbers*, 582 F.3d at 661. Upon careful consideration, I **CONCLUDE** this is not a case where the failure to make the required "B" criteria

findings is clearly harmless.

### C. Remedy

I also cannot conclude the Plaintiff is entitled to benefits. A court may reverse an ALJ's decision and immediately award benefits only if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1984) (quoting *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176. Because I **FIND** that the ALJ failed to weigh and resolve all essential factual issues, I **CONCLUDE** that this standard is not satisfied here. Accordingly, I **RECOMMEND** the decision of the Commissioner be reversed and this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative consideration consistent with this report and recommendation. This conclusion in no way suggests the outcome that should be reached upon further review.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' pleadings, I **RECOMMEND:**[6]

---

[6] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(1) Plaintiff's motion for summary judgment [Doc. 7] seeking remand under Sentence Four of 42 U.S.C. § 405(g) be **GRANTED**.

(2) Defendant's motion for summary judgment [Doc. 11] be **DENIED**.

(3) The Commissioner's decision denying benefits be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE